## Henry Vaughn v. The State.

### No. 3926.    Decided March 20, 1907.

**1.—Murder in First Degree—Manner of Witness on the Stand.**

Where upon trial for murder the State's witness gave way to her feelings, shed tears and made some exclamations on the witness stand, to which the defendant's counsel objected, and upon which the court made no ruling, there was no error.

**2.—Same—Declarations of Defendant.**

Upon trial for murder, there was no objection in admitting the declaration of the defendant and the colloquy which occurred between him and the witness.

**3.—Same—Habits of Deceased in Carrying Razor—Presumptions.**

Upon trial for murder, there was no error in rejecting testimony as to whether deceased had ever been seen with a razor or a knife and that she had a reputation of carrying them, all of which the witness denied; and whether witness had heard of the difficulty deceased had in which she cut another woman with a razor, which was also answered in the negative.

**4.—Same—Bill of Exceptions—Knife Used.**

Where upon trial for murder the State proved by an officer that the defendant claimed he had used a certain knife in killing the deceased after he had been warned, there was no error; and where the bill of exceptions was not sufficiently clear to show whether such admission of defendant was made at an inquest, and what bearing the identification of the knife had upon the same, the same could not be reviewed.

**5.—Same—Court Instructing Witness—Reputation of Deceased.**

Where upon trial for murder the defendant was on the stand to prove the general dangerous reputation of the deceased, there was no error in the court instructing the witness that he must first answer, yes or no, as to whether he knew the general reputation of the deceased before answering what that reputation was; especially where the witness answered in the negative.

**6.—Same—Defendant's General Reputation.**

Upon trial for murder, there was no error in excluding testimony that defendant was a member of a certain order, and that no man could belong thereto unless he was a pretty good man.

**7.—Charge of Court—Requested Charges—Repetition.**

Upon trial for murder, it was not necessary to submit charges which had already been given or to refuse to repeat charges after they had been once given.

**8.—Same—Declarations by Juror.**

Upon trial for murder, where one of the jurors was overheard to say that he believed defendant was guilty and that he was willing to hang him, there was no reversible error.

**9.—Same—Interruption of Counsel by Juror—Questions to and Recall of Witness—Stenographer's Report.**

Where upon trial for murder, one or two jurors took issue with defendant's counsel statement as to what a certain witness had testified, there was no error to refuse counsel's request to have the stenographer read the stenographic report of witness' testimony to the jury; and there being no request by the jury to recall said witness, there was no error. Besides the bill of exceptions did not set out the testimony about which the disagreement arose.

Appeal from the District Court of Bexar.    Tried below before the Hon. Edward Dwyer.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

No brief for appellant on file.

*F. J. McCord,* Assistant Attorney-General, for the State.—McCoy v. State, 25 Texas, 33; Farrer v. State, 42 Texas, 265.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the first degree, his punishment being assessed at death.

Appellant was convicted for the murder of his wife, cutting her throat with a knife, under circumstances the jury determined to be upon express malice. On the morning of and preceding the homicide, the mother of the deceased was permitted to testify, that she was at home by herself, and appellant came there. The witness went on to state some preliminary facts as to what she did herself in regard to cleaning up the house, and matters of that sort, which were excluded by the court upon exception of appellant. She then stated that she sat down and after a while it seemed she heard some one coming in at the back part of the house and wondered who it was, heard whoever it was drag his feet upon the back gallery. The witness says it rather frightened her. The court asked, "Who was that?" A. "It was Henry Vaughn, and I sat there and he stood there awhile and he said 'Where is Mary?'" Q. "What time in the morning was that?" A. "I don't know, I guess it was about 10 o'clock as well as I remember. I didn't look at the clock. I know it was late. So I sat there and was eating and paid no attention to him, and he stood there, and after awhile he said, 'Where is Mary?' I said she went off this morning. 'What time did she go?' I said I don't know what time she went; I didn't notice what time she went. He stood there awhile and looked at me; he passed right in my back by the little door coming from the kitchen to the dining-room, and he looked so straight, looked like he was looking under the dresser." Counsel for the defendant: "We objected to that, your honor." The court: "State what he did." A. "Then he turned back and said to me, 'Mary has been to Lucy Leith's talking about me.' I said: 'Here you go with a whole lot of lies; here you go, you ought to stop it man and attend to your business and stop listening to lies,' and I said, 'Another thing you can't blame people for talking, you come here to make a racket.'" Counsel for the defendant: "We object to what she said about what other people said." The court: "She is telling the defendant this." Counsel for the defendant: "We except to the ruling of the court." Exception was reserved to this testimony because irrelevant; what she did was immaterial, and all of the testimony was prejudicial. This is signed with the qualification that the court sustained defendant's exception except as to the conversation with the defendant by the witness. This was not error. That portion of the conversation occurring between

witness and appellant in regard to Mary, the deceased, and as detailed in this bill of exceptions, was admissible.

A bill of exceptions was reserved to the action of the same witness in giving way to her feelings and shedding tears, and some exclamations made by her on the witness stand. This witness stated that when she arrived at the gate where the homicide was committed a policeman stood there and did not want her to see her deceased daughter lying in the yard. Counsel for the defendant: "We object to. that, if the court please." The court: "Never mind that, state what you did and saw." A. "Then I saw when I looked over the gate—Oh Lord it's awful hard—when I got to the gate and was going in they had a man to keep me from going in and a lady pulling me and I looked over the gate and saw, Oh Lord, Oh my God—Oh Lord." The expression, "Oh Lord" was repeated three or four times. Appellant objected to the action of the witness and suggested that she quiet herself, and requested a bill of exceptions to the entire proceedings. The court remarked that they are trying to quiet her as hard as they know how. The witness cried and sobbed, and the proceedings were delayed a little while, and the deputy sheriff handed her some water. Whereupon counsel for the defendant asked the court to instruct the jury not to consider the actions of the witness. The court made the following statement: "The jury is there to view the witness, I have nothing to say to the jury." Counsel for the defendant: "We except to the ruling of the court." After the witness cried and sobbed for a few moments she was taken from the court room, by consent of all parties. It is contended in bill of exceptions that this was highly prejudicial to appellant's cause before the jury, and the court should have instructed the jury to disregard her actions and exclamations. The court signs this with the qualification that the court could not control the feelings of the witness, and the jury is the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony. Under the recent case of Holt v. State, decided at the present term of this court, this would not constitute a cause for reversal. For a discussion of the matter see that case.

Caroline Smith was testifying for the State, and stated that she was standing on the track with Lucy Leith and they started up the track, and Henry Vaughn said, "Mrs. Smith." Counsel for defendant at this point objected to what was said by the parties, as it was the defendant talking in her presence. Appellant then said, "I want to have a private talk with my wife and don't want any one to know my business," and witness said, "I will go back Mary," and Mary said, "No, don't go back." Mary was appellant's wife. It is objected because this testimony was immaterial and prejudicial. We are of opinion that this evidence was admissible. It was the appellant himself talking to the parties present, and asking them to excuse themselves so that he could have a private talk with his wife.

While Caroline Smith was on cross-examination, appellant asked her

if she ever saw deceased with a razor, which she denied. She further denied that she ever saw her with a knife except when sitting at the table eating. There are several questions and answers along this line wherein appellant sought to prove by this witness that she had seen deceased with a razor or knife, and further that she had the reputation of carrying a razor, all of which was denied by the witness. Appellant then sought to prove by the same witness that she knew something about a difficulty between the deceased and one Mary Akers, in which difficulty deceased had cut the other woman with a razor. The witness denied ever having heard of it or knowing anything about it. She was then asked if she had ever heard anything about it. The State's counsel then objected and the court sustained the objection. The only purpose, it seems, for which this testimony was sought was in trying to prove the habit of deceased in carrying a razor, and that she would likely carry into execution any threats she might make. Strictly speaking, this testimony as presented was not admissible, and as presented by the bill it shows no reason for its admission. Appellant was the husband of the deceased, and if she was in the habit of carrying a razor he perhaps would have known that fact. Appellant's theory seems to be that if she had the reputation of carrying a razor, that it would be deducible, therefore, that her reputation was such that she would carry into execution a threat. One presumption cannot be based upon another. While it might be proved that the reputation of the deceased was that of a dangerous person and she was liable to carry into execution a threat, still this could not be proved by another reputation that she had of going armed with a razor. We are of opinion that the court did not err in refusing to admit the testimony as presented.

Stevens, the constable, was introduced for the purpose of identifying the knife used by appellant in committing the homicide. It seems that appellant was under arrest at the time he told the witness that the knife pointed out was the knife used in committing the homicide, and this was subsequent to the warning given by the constable, and, among other things, after being so warned, appellant identified the knife in question as the knife with which he cut the throat of the deceased. Counsel for defendant insisted that the witness was attempting to give testimony which was brought out at the inquest proceedings, but this seems to be left in doubt as to whether it was at the inquest or at the jail after the warning. This part of the bill seems to present the question: Q. "You say you had a conversation with the defendant?" A. "Yes, the knife was lying on the table, and I asked him, if it was the knife he referred to in the conversation in the county jail, and he said 'yes, it was the knife.'" Q. "I will ask you to examine that knife, Mr. Stevens?" A. "Well, it looks just like the knife." Q. "Is anything about it you recognize?" A. "The blood on it and it is the same make of knife. I did not have it in my possession all the time." Q. "Is this the knife?" A. "That's the knife."

Q. "This is the knife he identified and said it was the knife he used in this killing (at inquest proceedings)?" A. "Yes, sir." Counsel for the defendant: "The court understands our exception goes to all this testimony?" The court: "Yes, I understand the objection." Exception was reserved to this because it was shown the defendant stated he did not care to make any statement to them; that frequently, in making his statements he hesitated and stopped and would not proceed again to make a statement except upon the urgent solicitation of the constable and district attorney, and that a part of the testimony was from statements made or claimed by him to have been made by the defendant at the inquest proceedings, which were in fact a preliminary hearing; that at said examination or inquest the defendant was not represented by counsel and the State was, and that appellant was there under arrest. It is a difficult matter to understand exactly what the trouble is and which occurrence the testimony relates to or bears upon, and in that condition of the record we do not feel authorized to review the bill of exceptions. It was admissible to identify the knife as was done. Bills of exception must be clear enough to indicate to the court the testimony sought to be excluded and the reasons for its exclusion. Unquestionably, if appellant identified the knife and made statements indicating that the knife in question was the one he used, having been warned before making such statements, it would be admissible, although he was under arrest, but what bearing the inquest proceedings had upon the identification of the knife and from what is said in the bill, we are unable to understand, but as the bill is presented, it fails to show error.

While appellant was testifying in his own behalf, the following matters occurred, speaking of deceased: Q. "Did you know her general reputation as to whether or not she carried razors?" State objected. Q. "Well then, do you know her general reputation as to whether she was a peaceable and law abiding woman, or a violent and dangerous woman?" The court: "Answer yes or no." A. "I don't know. I don't know anything about it." Counsel for the defendant: "I object to the court and counsel for the State instructing the witness." The court: "I have to instruct this witness to answer yes or no, the statute says so." Counsel for the defendant: "We object to the manner in which the court is doing it." The court: "The objection is overruled." Counsel for the defendant: "We except." We fail to see where there is anything reserved in this bill of exceptions that was any way injurious. The court instructed the witness that he must first answer yes or no, as to whether he knew her general reputation, before answering what that reputation was. We think the court was correct in this. There was no error in this because the witness answered that he did not know anything about the deceased's reputation. The same character of proceedings was had with reference to other witnesses set out in bills of exception, which we deem unnecessary to review. In every instance, the witnesses, sooner or later, after being

instructed by the court, answered the question, and generally favorably to appellant.

Another bill of exceptions was reserved to the ruling of the court refusing to permit the witness Robinson to state that no man could belong to the U. B. F. society or order unless he was a pretty good man, appellant being a member of that order. We suppose this evidence was offered to show that it related to appellant's general reputation.

There were several charges requested by appellant, two of which were given, and the other two refused. The rejected instructions had relation to and bore upon same questions as those submitted in the charges given, and were sufficiently covered by the instructions given. It is not necessary to repeat charges when once given, and it is not error to refuse to repeat the charges after they have been once given.

After the testimony had closed and pending the argument, during perhaps a recess of the court, at least the jury had retired to the water-closet, one of the jurors was overheard to state in reference to appellant, "I believe the damn scoundrel is guilty, and for my part we will hang him." That this affiant further stated that he heard some members of the jury discussing the case, but this was the only language which he could relate that he had heard. It is contended that this is reversible error or rather that it constituted ground for a motion for new trial. No authority has been cited in support of this statement, and Scott v. State, 4 Texas Ct. Rep., 842, is authority against appellant's contention.

There is another question presented for revision. While counsel for appellant was discussing the facts to the jury, one or two jurors took issue with him in regard to counsel's statements as to what the witness Caroline Smith should have testified. When this discussion arose between the counsel and the jurors, the counsel requested that the stenographer who took down the testimony should be called with his stenographic report and read to the jury from such report the particular statements about which the controversy or discussion arose. This was declined by the court, and the bill is qualified by stating that the court asked the jury if any of them desired the witness to be recalled and they all answered in the negative. The statute provides that at the request of the jury any witness may be recalled to state the testimony given by the witness in regard to any particular point about which a controversy may arise, but by its terms it does not authorize the court to recall a witness for any other reason. In fact, the statute has limited the right to recall a witness to the request by the jury, and not only so, but when recalled a witness' testimony must be a repetition of the statements made while on the witness stand. We have found no case where witnesses have been recalled otherwise than under the statute, nor a discussion of such questions. Nor do we feel authorized to extend the statute to reproducing the testimony by the stenographer instead of the witness as provided by the statute.

If it was necessary to have the exact language of the witness before the jury, then the witness must be called, unless by agreement they might substitute the stenographer's statement on the theory that he had taken down correctly the statement of the witness, but when the terms of the statute are invoked the witnes smust be recalled. It may be further noted that the bill of exceptions does not state the testimony about which the disagreement arose. We are of opinion that the bill is deficient in this; that in this as other matters, the bill must be not only sufficiently definite for the court to understand the question at issue, but it must show something that would have probably injured appellant's cause before the jury. The case from the State's standpoint would justify the verdict of the jury. There was evidence which would have authorized the jury to find a milder punishment. Appellant killed his wife he says because she had been going with another man, but upon the trial there was a failure to show this testimony otherwise than by his statements. The party from whom he said he obtained this information was placed on the stand and denied conveying to him such information. Appellant and his wife had been separated sometime, and it seems his wife had refused to live with him. He went to her mother's where she was living, and under the circumstances from which the jury might infer, with coolness, deliberation, and premeditation, cut her throat and killed her. Under the condition of the record we do not feel that the court would be authorized to say that the jury had rendered a verdict not supported by the testimony.

Finding no error in the record, the jdugment is affirmed.

*Affirmed.*